UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-cv-25293

MARSHA HAWKINS,

     Plaintiff,

v.

PRINCESS CRUISE LINES, LTD.,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY[1]**

Plaintiff, MARSHA HAWKINS (hereinafter "HAWKINS"), through undersigned counsel, sues Defendant, PRINCESS CRUISE LINES, LTD., (hereinafter "PRINCESS"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. HAWKINS seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by PRINCESS.

---

[1] When this complaint refers to a numbered paragraph, such as "paragraph 17" for example, unless otherwise stated, it is referring to the corresponding numbered paragraph of this complaint.

5.   HAWKINS is *sui juris* and is a resident and citizen of the state of Washington.

6.   PRINCESS is a citizen of the state of California and the nation of Bermuda.

7.   PRINCESS is a foreign corporation that is authorized to conduct and that does conduct business in the state of Florida, that at all times material hereto was and is doing business in Miami-Dade County, Florida, and that maintains its corporate headquarters and principal place of business in Los Angeles County, California.

8.   PRINCESS, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a.   Operated, conducted, engaged in, or carried on a business venture; and/or

   b.   Had an office or agency; and/or

   c.   Engaged in substantial activity; and/or

   d.   Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.   All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**FACTUAL ALLEGATIONS**

10. At all times material hereto, PRINCESS owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Sapphire Princess*.

11. *The Sapphire Princess* is a part of PRINCESS's Grand Class of ships.

12. PRINCESS's Grand Class is comprised of the following ships: *the Sapphire Princess*, *the Ruby Princess*, *the Emerald Princess*, *the Crown Princess*, *the Caribbean Princess*, *the Diamond Princess*, and *the Grand Princess*.

13. Ships within PRINCESS's Grand Class share substantially similar designs, including the deck design, railings, and protruding metal plate that gave rise to this action.

14. At all times material hereto, PRINCESS owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in HAWKINS's incident.

15. HAWKINS's incident occurred on or about September 8, 2024, while she was a fare-paying passenger on PRINCESS's vessel, *the Sapphire Princess*.

16. On or about September 8, 2024, HAWKINS was carefully walking on Deck 16 of the vessel walking alongside the railings on the deck, while a large crowd gathered along the railing to see a glacier, when she suddenly tripped on an angled, metal plate protruding from the base of the railing and fell.

17. As a result, HAWKINS sustained severe injuries that include, but are not limited to, a fractured patella shattering into twenty pieces, surgical implants comprised of a metal plate and fifteen metal screws into her knee, chronic knee pain, and permanent loss of mobility, strength, and range of motion in her knee.

18. At all relevant times, HAWKINS was wearing secure and proper footwear.

19. At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a. There was an angled metal plate protruding from the base of the railing on Deck 16 into the path of foot traffic, which posed a tripping hazard to passengers walking near the railings;

   b. The protruding metal plate was not adequately visible to passengers, including HAWKINS, walking in the area, and it lacked adequate warning and/or color contrast to bring the tripping hazard to the attention of passengers;

c.  The visibility of the protruding metal plate and the subject area was impaired because there was not adequate lighting in the subject area and shadows covered the subject area, such that passengers, including HAWKINS, could not adequately see the protruding metal plate and perceive it as a tripping hazard;

d.  The large gathering of passengers in the area alongside the deck railing increased the chance for passengers, including HAWKINS, to trip and fall on the protruding metal plate and impaired the visibility of the same;

e.  The subject area where HAWKINS tripped during her incident was unreasonably dangerous, lacked adequate warning signs or other reasonable measures to mitigate passenger injuries, and was located in an area with high foot traffic where passengers are at a heightened risk of tripping and falling if there is a tripping hazard such as the angled metal plate protruding from the base of the railing; and

f.  Other dangerous conditions which will be revealed during discovery.

20.  Each of these dangerous conditions was a sufficient cause of HAWKINS's incident and injuries, each of these conditions caused HAWKINS's incident and injuries, and HAWKINS is alleging that PRINCESS was negligent as to each of these conditions in the alternative.[2]

21.  PRINCESS either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

---

[2] A sufficient cause means a cause that, acting alone, is sufficient to cause an effect. (https://www.verywellhealth.com/understanding-causality-necessary-and-sufficient-3133021). In this case, this means that each dangerous conditions HAWKINS has alleged alone was a cause of her incident such that the only way PRINCESS could have prevented HAWKINS'ss incident was to have adequately warned of or remedied each of these conditions.

a. There were PRINCESS crew members in the subject area within 10-15 feet of the exact location of HAWKINS's fall, and they were in the subject area prior to when HAWKINS walked there. However, the crew members failed to warn HAWKINS of the subject protruding metal plate and failed to repair the same or block off the area prior to HAWKINS tripping on it. This caused HAWKINS's incident due to the previously discussed dangerous conditions in paragraph 19;

b. These crew members had direct line of sight on the exact location on which HAWKINS tripped, were within viewing distance thereof, and were close enough to have seen that the subject protruding metal plate posed a tripping hazard to passengers. However, these crew members failed to block off, warn of, and/or repair the subject area prior to HAWKINS's fall;

c. PRINCESS participated in the installation and/or design of the deck railing, including the subject protruding metal plate, or alternatively, PRINCESS accepted the same with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject deck railing, including the protruding metal plate, such that PRINCESS should have known of the design defects of the same before providing the ship for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 19;

d. PRINCESS knew or should have known that large groups of passengers will gather in the subject area because one of the features of the subject cruise advertised by PRINCESS was viewing glaciers alongside the ship; therefore, PRINCESS knew or should have known that the protruding metal plate would pose a tripping hazard because a large number of passengers would be in the area, the attention of the

passengers in the subject area would be fixed on glaciers at sea, and visibility of the protruding metal plate would be impaired due to the concentration of passengers in the subject area;

e. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 17, and PRINCESS should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for PRINCESS to comply with or not, a fact finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done;

f. PRINCESS also knew or should have known of these dangerous conditions through inspecting the subject area involved in HAWKINS's incident, and if it did not know of these dangerous conditions, this was because PRINCESS failed to adequately inspect the subject area prior to HAWKINS's incident;

g. Moreover, PRINCESS knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

22. At all times relevant, the subject protruding metal plate was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

23. The subject protruding metal plate and the vicinity lacked adequate safety features to prevent or minimize HAWKINS's incident and/or injuries.

24. These hazardous conditions were known, or should have been known, to PRINCESS in the exercise of reasonable care.

25. These hazardous conditions existed for a period of time before the incident.

26. These conditions were neither open nor obvious to reasonable passengers, including HAWKINS, and PRINCESS failed to adequately warn HAWKINS of the dangers. PRINCESS failed to provide reasonable warnings such as, for example, a warning cone in the subject area to warn HAWKINS that the specific location of the fall was unreasonably dangerous. The dangerous conditions that PRINCESS needed to warn HAWKINS of are those discussed in paragraph 19.

27. At all times relevant, PRINCESS failed to adequately inspect the conditions discussed in paragraph 19, as well as the subject protruding metal plate and the vicinity, for dangers. For example, PRINCESS was required, by its own policies and procedures, to inspect the subject area in certain intervals of time (such as, for example, every fifteen minutes), to ensure that there were no tripping hazards. However, PRINCESS failed to inspect this protruding metal plate during the intervals required by its own policies and procedures, thereby causing it to be unable to address the unreasonable dangerousness of this protruding metal plate prior to HAWKINS's incident.

28. At all times relevant, PRINCESS had the ability to remedy the dangerous conditions but failed to do so. For example, PRINCESS could have covered, removed, or blocked off the location of the subject protruding metal plate that posed a tripping hazard but failed to do so. The dangerous conditions that PRINCESS needed to remedy are those discussed in paragraph 19.

29. At all times relevant, PRINCESS failed to maintain the conditions discussed in paragraph 19 in a reasonably safe condition. For example, PRINCESS failed to remove the protruding metal plate that posed a tripping hazard to passengers.

30. At all times relevant, PRINCESS participated in the design and/or approved the design of the subject area and the vicinity involved in HAWKINS's incident.

31. At all times relevant, PRINCESS participated in the installation and/or approved the installation of the subject area and the vicinity involved in HAWKINS's incident.

32. The crew members of *the Sapphire Princess* were in regular full-time employment of PRINCESS and/or the ship, as salaried crew members.

33. PRINCESS's crew members, employees, and/or agents were subject to the ship's discipline and master's orders, and PRINCESS had the right to hire and fire its crew members, employees, and/or agents.

34. PRINCESS is directly responsible and liable for their actions and the actions of its crew members, employees, and/or agents.

35. The crew members, including the medical staff, were employees and/or actual agents and/or apparent agents of PRINCESS, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

36. The crew members were represented to HAWKINS and the ship's passengers as employees of PRINCESS through signs, documents, and/or uniforms. The crew members were also paid a salary and/or hourly wage by PRINCESS. PRINCESS knew that the crew members represented themselves to be employees of PRINCESS and allowed them to represent themselves as such. HAWKINS detrimentally relied on these representations as HAWKINS would not have proceeded on the subject cruise had she believed the crew members were not employees of PRINCESS.

## COUNT I
## NEGLIGENT FAILURE TO REMEDY

HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1-36 as if set forth herein.

37. PRINCESS owed a duty to exercise reasonable care under the circumstances for the

safety of its passengers.

38. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the dangerous conditions discussed in paragraph 19.

39. At all times material, PRINCESS, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with PRINCESS, breached the duty of reasonable care owed to HAWKINS and were negligent by failing to adequately remedy the dangerous conditions discussed in paragraph 19.

40. PRINCESS either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 21.

41. Moreover, these risk-creating and/or dangerous conditions were caused by PRINCESS's failure to adequately remedy the dangerous conditions discussed in paragraph 19.

42. PRINCESS's breach was the cause-in-fact of HAWKINS's great bodily harm in that, but for PRINCESS's breach HAWKINS's injuries would not have occurred.

43. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

44. PRINCESS's breach proximately caused HAWKINS great bodily harm in that the incident that occurred was a foreseeable result of PRINCESS's breach.

45. As a result of PRINCESS's negligence, HAWKINS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, lost wages, lost earning capacity, loss of independence, loss of capacity for the enjoyment of life, expense of

hospitalization, medical and nursing care and treatment, and loss of the value of HAWKINS's vacation, cruise, and transportation costs.

46. The losses are permanent and/or continuing in nature.

47. HAWKINS has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARSHA HAWKINS, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that HAWKINS will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1-36 as if set forth herein.

48. At all times relevant, PRINCESS owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including HAWKINS.

49. Such duty includes, but is not limited to, the duty that PRINCESS owes to warn passengers of any dangers that it knew or should have known were not open and obvious to HAWKINS.

50. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

51.   At all times material, PRINCESS, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with PRINCESS, breached the duty of reasonable care owed to HAWKINS and was negligent by failing to warn HAWKINS of the dangerous conditions discussed in paragraph 19.

52.   Furthermore, PRINCESS knew or should have known of these dangerous conditions for the reasons discussed in paragraph 21.

53.   These dangerous conditions were also created by PRINCESS.

54.   PRINCESS failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or PRINCESS failed to warn HAWKINS despite knowing of the dangers.

55.   These dangerous conditions existed for a period of time before the incident.

56.   These conditions were neither open nor obvious to HAWKINS.

57.   PRINCESS's breach was the cause-in-fact of HAWKINS's great bodily harm in that, but for PRINCESS's breach HAWKINS's injuries would not have occurred.

58.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

59.   PRINCESS's breach proximately caused HAWKINS great bodily harm in that the incident that occurred was a foreseeable result of PRINCESS's breach.

60.   As a result of PRINCESS's negligence, HAWKINS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, lost wages, lost earning capacity, loss of independence, loss of capacity for the enjoyment of life, expense of

hospitalization, medical and nursing care and treatment, and loss of the value of HAWKINS's vacation, cruise, and transportation costs.

61.  The losses are permanent and/or continuing in nature.

62.  HAWKINS has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARSHA HAWKINS, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that HAWKINS will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT III**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT PROTRUDING METAL PLATE AND THE VICINITY**

HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1-36 as if set forth herein.

63.  PRINCESS negligently designed or, in the alternative, approved of the design of the subject area in the following manners:

a. PRINCESS designed or, in the alternative, approved of the design of the protruding metal plate on which HAWKINS tripped, despite the fact that it extended from the base of the railing into the path of passenger foot traffic, posing a tripping hazard to passengers;

b. PRINCESS designed or, in the alternative, approved of the design of the subject area where HAWKINS tripped and fell despite the fact that there were no reasonable safety measures such as reasonable places HAWKINS could grab in the subject area during her fall, which caused HAWKINS's injuries to be more severe, since if she was able to grab onto something reasonable during her fall, she would have been able to mitigate her injuries, as her fall would not have been as severe, and her injuries would therefore not have been as severe.

c. PRINCESS designed or, in the alternative, approved of the design of the subject area where HAWKINS tripped and fell despite the fact that the protruding metal plate was not adequately visible to passengers because it did not contrast with the surrounding floor, there was not adequate lighting in the area, and/or shadows cast by surrounding structures such that passengers could not adequately see the protruding metal plate; and

d. PRINCESS should have designed the subject area without the defects enumerated above, or in the alternative, should not have approved of the subject area with these defects present. Therefore, PRINCESS is liable for designing, or in the alternative, approving of the design of the subject area with these defects present.

64. At all times material hereto, PRINCESS owed a duty to its passengers, and in particular a duty to HAWKINS, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 19, as well as to design and install reasonable safeguards.

65. At all times material hereto, PRINCESS participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which HAWKINS was injured into the channels of trade, and/or PRINCESS approved

of the subject vessel's design, including the design of the deck railing, including the subject protruding metal plate, and the vicinity.

66. At all times material hereto, PRINCESS manufactured, designed, installed, and/or approved of *the Sapphire Princess*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to HAWKINS, to design, install and/or approve of the conditions discussed in paragraph 19 without the deficiencies discussed in paragraph 19.

67. At all times material hereto, PRINCESS through its agents and/or employees who were acting in the course and scope of their employment and/or agency with PRINCESS, designed, installed, and/or approved of the deck railing, including the subject protruding metal plate, and the vicinity involved in HAWKINS's incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

68. PRINCESS provides design elements of the vessels to the ship builder and/or approves of design elements which include the deck railing, including the subject protruding metal plate, and the vicinity.

69. PRINCESS maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Sapphire Princess*, during the new build process.

70. PRINCESS has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

71. PRINCESS has the right to inspect and reject design elements before taking possession of the ship.

72. However, PRINCESS permitted the dangerous conditions discussed in paragraph 19 to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

73. Furthermore, PRINCESS knew or should have known of these dangerous conditions for the reasons discussed in paragraph 21.

74. The design flaws that made the subject protruding metal plate and the vicinity involved in HAWKINS's incident unreasonably dangerous were the direct and proximate cause of HAWKINS's injuries.

75. PRINCESS is liable for the design flaws of the vessel, including the subject protruding metal plate and the vicinity involved in HAWKINS's incident, of which it knew or should have known.

76. PRINCESS failed to correct and/or remedy the defective conditions, despite the fact that PRINCESS knew or should have known of the danger(s).

77. PRINCESS's breach was the cause-in-fact of HAWKINS's great bodily harm in that, but for PRINCESS's breach HAWKINS's injuries would not have occurred.

78. Furthermore, the subject protruding metal plate and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

79. PRINCESS's breach proximately caused HAWKINS great bodily harm in that the incident that occurred was a foreseeable result of PRINCESS's breach.

80. As a result of PRINCESS's negligence, HAWKINS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, lost wages, lost

earning capacity, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of HAWKINS's vacation, cruise, and transportation costs.

81. The losses are permanent and/or continuing in nature.

82. HAWKINS has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARSHA HAWKINS, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that HAWKINS will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IV**
**<u>NEGLIGENCE FOR THE ACTS OF PRINCESS's CREW, STAFF, EMPLOYEES,</u>**
**<u>AND/OR AGENTS, BASED ON VICARIOUS LIABILITY</u>**

HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1-36 as if set forth herein.

83. The crew members described in paragraph 21 owed a duty to exercise reasonable care under the circumstances for the safety of PRINCESS's passengers.

84. The crew members described in paragraph 21 should have warned and/or assisted HAWKINS in avoiding tripping over the subject protruding metal plate.

85. The crew members described in paragraph 21 were agents of PRINCESS for the

following reasons:

a.      PRINCESS's crew members, including these crew members, were the staff and/or employees of PRINCESS, or were PRINCESS's agents, apparent agents, and/or servants; and/or

b.      These staff, employees, and/or agents were subject to the right of control by PRINCESS; and/or

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.      PRINCESS acknowledged that this staff, employees, and/or agents would act on PRINCESS's behalf, and they accepted the undertaking.

86.  PRINCESS is vicariously liable for the negligent acts of its staff, employees, and/or agents, including the crew members described in paragraph 21 and who failed to warn HAWKINS of the dangerous conditions discussed in paragraph 19 and/or who failed to adequately assist HAWKINS in avoiding tripping over the subject protruding metal plate.

87.  The breaches of these crew members were the cause-in-fact of HAWKINS's great bodily harm in that, but for these crew members' breaches HAWKINS's injuries would not have occurred.

88.  The breaches of these crew members proximately caused HAWKINS great bodily harm in that the incident that occurred was a foreseeable result of their breaches.

89.  As a result of the negligence of these crew members, HAWKINS has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and lost wages, lost earning capacity, loss of the value of

HAWKINS's vacation, cruise, and transportation costs.

90. The losses are permanent and/or continuing in nature.

91. HAWKINS has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, MARSHA HAWKINS, demands judgment against Defendant, PRINCESS CRUISE LINES, LTD., for damages suffered and costs incurred, as well as for damages and costs that HAWKINS will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, MARSHA HAWKINS, demands trial by jury on all issues so triable.

**Dated:** November 13, 2025.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Rosario K. Sorrentino, Esq.**
Florida Bar No.: 1049132
rsorrentino@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P: (305) 441.0440

F: (305) 441.0198
***Attorneys for HAWKINS***